# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2026

Lyle W. Cayce
Clerk

_____

No. 24-60473
_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Andrew Ducksworth,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:23-CR-25-1

_____

Before Smith, Stewart, and Ramirez, *Circuit Judges*.
Irma Carrillo Ramirez, *Circuit Judge*:

Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc, the petition for rehearing en banc is DENIED. Treating the petition for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is GRANTED. The prior panel opinion, *United States v. Ducksworth*, 159 F.4th 965 (5th Cir. 2025), is WITHDRAWN, and the following opinion is SUBSTITUTED.

No. 24-60473

Andrew Ducksworth appeals the denial of his motions to suppress a firearm and to dismiss an indictment charging him under 18 U.S.C. § 922(g)(1). He also challenges the sufficiency of the evidence. We AFFIRM.

I

A

Around 9:00 p.m. on November 29, 2021, a Hattiesburg police officer stopped a car with a defective tag light. After the driver told the officer that he had neither identification nor proof of insurance, the officer asked him to step out of the car. While conducting a protective pat-down of the driver, the officer felt a "hard, solid object in between [the driver's] legs." The driver initially denied that the object was a weapon but eventually admitted that it was a firearm. The officer handcuffed the driver and placed him in his squad car.

The officer then approached the car and asked the passenger, Ducksworth, to step out. Ducksworth replied that he was paralyzed from the waist down. The officer asked Ducksworth to put his hands up, and Ducksworth complied. As he began a pat-down of Ducksworth, the officer stated to Ducksworth that the driver had a firearm. He felt an object between Ducksworth's legs and said, "you've got one too." Ducksworth denied that the object was a firearm. The officer handcuffed Ducksworth and awaited backup. After removing a loaded firearm from his pants and learning that he was a convicted felon, officers arrested Ducksworth.

B

Ducksworth was charged with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Ducksworth moved to suppress the firearm, arguing that the officer lacked reasonable suspicion to

pat him down. At a hearing, the officer testified about the traffic stop and the pat-downs. Body- and dash-cam footage corroborated his testimony. He also testified that, based on his patrol experience, he knew the area in which he stopped the vehicle was a high-crime area. The district court denied the motion.

Ducksworth subsequently moved to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment on its face and as applied to him. The district court also denied that motion.

At a bench trial, Ducksworth stipulated to every element of § 922(g)(1) and presented no evidence. The district court found him guilty and sentenced him to thirty-six months of imprisonment and three years of supervised release. Ducksworth appeals the denial of both motions and, for the first time, challenges the sufficiency of the evidence.

## II

When considering the denial of a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Rangel-Portillo*, 586 F.3d 376, 379 (5th Cir. 2009). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010).

Review of the denial of a motion to dismiss the indictment and of the constitutionality of a statute is also de novo. *United States v. Jubert*, 139 F.4th 484, 489 (5th Cir. 2025).

Finally, we review unpreserved challenges to the sufficiency of the evidence for plain error. *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018).

III

Ducksworth first argues that the district court erred in denying his motion to suppress because the officer lacked particularized, reasonable suspicion to perform a pat-down of him.

A

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. "Generally, the fruits of illegal searches and seizures are inadmissible under the exclusionary rule." *United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999). Unless an exception applies, warrantless searches and seizures "are *per se* unreasonable . . . ." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting *Thompson v. Louisiana*, 469 U.S. 17, 19–20 (1984)). *Terry* stops and pat-downs, or *Terry* "frisks," are among those exceptions. *Terry v. Ohio*, 392 U.S. 1 (1968).

*Terry* stops and pat-downs are evaluated under *Terry*'s two-step framework. *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001). The first question is whether the stop was "justified at its inception." *Id.* The second is whether the subsequent search or seizure was "reasonably related in scope to the circumstances that justified the stop." *Id.*

Under *Terry*, an officer may perform a protective pat-down if he has reasonable suspicion that the subject is armed and dangerous. *United States v. Baker*, 47 F.3d 691, 693 (5th Cir. 1995) (citing *Terry*, 392 U.S. at 22–24). "The officer need not be absolutely certain that the individual is armed." *Terry*, 392 U.S. at 27. Instead, an officer needs only an "objective basis," *United States v. Darrell*, 945 F.3d 929, 932 (5th Cir. 2019), that is "specific" and somewhat "individualized" to the subject. *United States v. Hanson*, 801 F.2d 757, 762 (5th Cir. 1986); *see also Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990) ("*Terry* requires reasonable, individualized suspicion . . . ."). The question is "whether a reasonably prudent man in the circumstances would

4

be warranted in the belief that his safety or that of others was in danger." *Baker*, 47 F.3d at 693. Whether reasonable suspicion exists is an objective question that considers the "totality of the circumstances," *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992), and "what the officers knew before" initiating the pat-down. *Florida v. J.L.*, 529 U.S. 266, 271 (2000).

Here, the district court concluded that the officer had reasonable suspicion because: (1) the driver possessed a weapon and lied about it; (2) the surrounding area was "high crime"; and (3) Ducksworth did not comply with the officer's instructions.

## B

Ducksworth mainly argues that the officer's pat-down was unlawful because the driver's dishonesty about and possession of a firearm cannot be imputed to him under *Ybarra v. Illinois*, 444 U.S. 85 (1979).[1]

In *Ybarra*, the Supreme Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91. *Ybarra* rejected a "guilt-by-association" theory of reasonable suspicion and probable cause to pat-down a tavern patron about whom officers "knew nothing in particular" and who was simply on public premises subject to a search warrant. *Id.* Notably, the patron had no relation to the individual named in the warrant. *Id.*

*Ybarra* did not categorically forbid consideration of one's companionship with another in deciding whether reasonable suspicion exists, however. As the Supreme Court has observed, "a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common

_____

[1] Ducksworth does not contest the legality of the traffic stop.

enterprise with the driver . . . ." *Wyoming v. Houghton*, 526 U.S. 295, 304 (1999). Likewise, "a 'suspect's companionship with or propinquity to an individual independently suspected of criminal activity is a factor to be considered in assessing the reasonableness'" of an officer's conduct. *United States v. Wilson*, 143 F.4th 647, 660 (5th Cir. 2025) (quoting *United States v. Thomas*, 997 F.3d 603, 611 (5th Cir. 2021)); *see also Silva*, 957 F.2d at 161 (considering "companionship with or propinquity to" a suspect in the reasonable suspicion calculus). *Ybarra* does not hold that companionship with another is irrelevant. Instead, it holds that it is not sufficient. Reasonable suspicion must still be "to some extent, individualized to the particular characteristics exhibited by a particular person." *Hanson*, 801 F.2d at 762.

This court has not yet considered whether a driver's possession of a firearm can contribute to reasonable suspicion to pat-down his passenger. The First Circuit has held, however, that a driver's possession of a firearm may give rise to reasonable suspicion to pat-down his passenger, at least when coupled with other circumstances. *See United States v. Tiru-Plaza*, 766 F.3d 111, 120–22 (1st Cir. 2014). In *Tiru-Plaza*, after officers spotted a firearm in the waistband of the driver of a vehicle, they patted-down the passenger and found a firearm. *Id.* at 113–14. The passenger argued that under *Ybarra*, the officers lacked particularized reasonable suspicion to perform the pat-down. *Id.* at 120. The First Circuit distinguished *Ybarra* based on the Supreme Court's observation in *Houghton* that drivers and passengers are often engaged in a "common enterprise." *Id.* at 121 (quoting *Houghton*, 526 U.S. at 304–05). It concluded that "the situation gave rise to a reasonable concern for officer safety—the officers were outnumbered, in relative darkness, and could reasonably believe that they were dealing with a volatile situation . . . ." *Id.*

We agree with the First Circuit that "it would be beyond folly for our court to ask police officers to ignore the clear relevance of discovering a

hidden firearm on the driver"—especially when the driver lied about having a weapon. *See id.* Unlike the "unwitting tavern patron in *Ybarra*," Ducksworth shared a connection with the driver, who could not present identification or proof of insurance, possessed a hidden firearm, and lied about it—at night, in a public, high-crime area. *See id.*; *Houghton*, 526 U.S. at 304.[2] And while the sole, outnumbered officer approached Ducksworth with his weapon drawn, Ducksworth opened his door as if to exit the vehicle before he was ordered to do so, but then told the officer he could not exit the vehicle because he was paralyzed. We have previously found that similar types of actions can give rise to reasonable suspicion. *See, e.g.*, *United States v. Rodriguez*, 33 F.4th 807, 813 (5th Cir. 2022) (treating the fact that a "driver initially opened his door as the officers approached" as a factor in deciding whether reasonable suspicion existed); *United States v. Berry*, 664 F. App'x 413, 419 (5th Cir. 2016) (per curiam), *as revised* (Dec. 14, 2016) (noting that "inconsistent and untruthful statements can be a factor in developing reasonable suspicion during a traffic stop"); *United States v. Coleman*, 969 F.2d 126, 131 (5th Cir. 1992) (per curiam) (noting that a driver "did not stay in his car, but exited quickly" in deciding whether a search was justified); *United States v. Garza*, 727 F.3d 436, 442 (5th Cir. 2013) ("Unprovoked flight, as well as nervous, erratic behavior, are factors which support a finding of reasonable suspicion."); *United States v. Rose*, 48 F.4th 297, 304 (5th Cir. 2022) (noting that "furtive movements" can "heighten" suspicion");

---

[2] Ducksworth argues, contrary to the officer's testimony, that "the record is devoid of any evidence" that the area had a high crime rate. "Courts generally accept officers' testimony about whether an area is one with a high incidence of criminal activity." *Rucker v. Marshall*, 119 F.4th 395, 401 (5th Cir. 2024) (citing *United States v. Hill*, 752 F.3d 1029, 1035 (5th Cir. 2014)); *see also United States v. Flowers*, 6 F.4th 651, 656 (5th Cir. 2021). Because the district court's conclusion that the area was "high crime" is "plausible in light of" that testimony, its factual finding was not clearly erroneous. *See United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010).

*United States v. McKinney*, 980 F.3d 485, 495 (5th Cir. 2020) ("Nervous behavior is indeed supportive of reasonable suspicion."). Taken together, these circumstances created a "reasonable, individualized suspicion" that Ducksworth could also be armed and dangerous. *See Buie*, 494 U.S. at 334 n.2. "[A] reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *See Baker*, 47 F.3d at 693.

The district court did not err in denying the motion to suppress.

IV

Ducksworth next argues that there is insufficient evidence to convict him under § 922(g)(1) because the record is "devoid of any evidence of a key element of the offense[.]" He claims that *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025), requires the Government to prove a specific predicate felony that supports permanent lifetime disarmament. Because Ducksworth only stipulated that he had been convicted of a felony—but not the specific predicate or that it supports permanent lifetime disarmament—he contends that the evidence is insufficient to convict him.

For a conviction under § 922(g)(1), the Government must prove that: (1) a defendant "had a previous conviction punishable by a term of imprisonment exceeding one year"; (2) "he knowingly possessed a firearm"; (3) which "traveled in or affected interstate commerce"; and (4) he "knew . . . he had a prior conviction punishable by a term of imprisonment exceeding one year . . . when he possessed the firearm." *See United States v. Johnson*, 990 F.3d 392, 400 (5th Cir. 2021). Ducksworth challenges the first element.

The Supreme Court has specifically held that allegation of a specific predicate felony is not required. *Old Chief v. United States*, 519 U.S. 172, 186 (1997); *see also United States v. Johnson*, 880 F.3d 226, 232 (5th Cir. 2018).

*Diaz* did not, and could not, add this requirement to § 922(g)(1). Courts "are not free to rewrite statutory text." *McNeil v. United States*, 508 U.S. 106, 111 (1993). *Diaz* only left the door open for as-applied challenges to the statute because "not all felons today would have been considered felons at the founding." 116 F.4th at 469, 471–72. Ducksworth conflates as-applied challenges with sufficiency review.

Under similar circumstances, this court has rejected a sufficiency challenge to the first element of § 922(g)(1). In *United States v. Broadnax*, we held that "[w]here a defendant's stipulation to a prior felony offense uses the very language of the statute that defines that element of the offense, he has stipulated that the element is satisfied as a matter of law." 601 F.3d 336, 346 (5th Cir. 2010). Ducksworth stipulated that he "was previously convicted in a court of a crime punishable by imprisonment for a term in excess of one year." Because this stipulation "uses the very language of the statute that defines that element of the offense[,]" *see* § 922(g)(1), Ducksworth "stipulated that the element is satisfied as a matter of law." *See Broadnax*, 601 F.3d at 346.

Ducksworth failed to demonstrate plain error.

V

Finally, Ducksworth argues that the district court erred in denying his motion to dismiss the indictment because § 922(g)(1) violates the Second Amendment on its face and as applied to him.

Ducksworth concedes that his facial challenge is foreclosed under *Diaz*. He also admits that he was on parole when he was arrested, so his as-applied challenge is also foreclosed. *See United States v. Kimble*, 142 F.4th 308, 312 (5th Cir. 2025), *cert. denied*, 2026 U.S. LEXIS 469 (Jan. 20, 2026) (No. 25-5747) ("[I]f a defendant is caught possessing a gun while out on supervised release for a prior felony sentence, his as-applied challenge will . . . fail.").

No. 24-60473

VI

AFFIRMED.